**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | |
| **v.** | : | **Case No.  JKB-24-313** |
| | : | |
| **RONTHONY WARD** | : | |
| | : | |
| **Defendant.** | : | |

---

**MOTION TO SUPPRESS FRUITS OF SEARCH WARRANTS, REQUEST FOR
*FRANKS* HEARING, AND REQUEST FOR DISCOVERY STATUS CONFERENCE**

Defendant Ronthony Ward ("Mr. Ward"), by and through his counsel, Michael E. Lawlor, and Brennan, McKenna & Lawlor, Chtd., and Jennifer Smith, Law Offices of Gary E. Proctor, LLC, respectfully submits the following Motion to Suppress Fruits of Search Warrants, Request for *Franks* Hearing, and Request for Discovery Status Conference. Mr. Ward moves to suppress the fruits of the following search warrants: (1) September 21, 2023 warrant for real-time location tracking information for phone number 202-621-4663 and use of cell site simulator to locate the same (Ex. A); (2) February 23, 2024 warrant for real-time location tracking information for phone number 202-621-4663 and use of a cell site simulator to locate the same (Ex. B); (3) July 8, 2024 warrant to search 2107 High Timber Road and the person of Ronthony Ward (Ex. C); and (4) July 22, 2024 warrant to search a cell phone seized from 2107 High Timber Road (Ex. D).[1] Additionally, as to these search warrants, Mr. Ward respectfully requests a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). Lastly, Mr. Ward respectfully requests that the Court

---

[1] These exhibits are being filed as proposed sealed documents. All of these warrants were issued by the United States District Court for the District of Maryland. Additionally, to the extent any pinging data for the -4663 number was obtained without a warrant, Mr. Ward moves to suppress that data.

convene a status conference regarding discovery as a result of the Government's recent disclosure that it either destroyed or failed to preserve surveillance footage from the area of 2107 High Timber ranging in date from on or about September 8, 2023 through on or about February 26, 2024. In light of the upcoming trial date, Mr. Ward respectfully requests that the Court convene a discovery status conference on an expedited basis. Mr. Ward respectfully requests an evidentiary hearing on these matters.

## I.    Factual and Procedural Background

This case arises from a federal investigation conducted by the Drug Enforcement Administration. Throughout the investigation, from September 2023 through July 2024, members of law enforcement applied for and obtained a number of search warrants, including the warrants at issue in this motion. On July 8, 2024, DEA Special Agent Donald Quarles applied for a warrant to search, among other locations and individuals, the person of Ronthony Ward and the residence at 2107 High Timber Road in Fort Washington, Maryland. Judge Coulson of this Court issued the warrant. At 6:00 a.m. on July 16, 2024, federal agents and task force officers from the Prince George's County Police Department executed the search warrant and arrested Mr. Ward, who at the time was wearing just a towel. The Government alleges that drugs and firearms were found inside of the residence.



Though the investigation at issue was undoubtedly federal, law enforcement elected not to pursue federal charges at the time of Mr. Ward's arrest. Instead, Mr. Ward was charged with drug and firearms offenses in the District Court of Maryland for Prince George's County. *See State v. Ward*, No. D-05-CR-24-017435. Mr. Ward was ordered held without bond on that matter. On or about August 15, 2024, the matter was forwarded to the Circuit Court for Prince George's County, where Mr. Ward was charged with firearms and drug offenses arising out of the July 16, 2024 search. *See State v. Ward*, No. C-16-CR-24-001960. Mr. Ward remained detained in the Prince George's County Detention Center. Months later, on October 24, 2024, the Government filed an Indictment (ECF No. 1) charging Mr. Ward and co-defendants Misael Gonzalez and Jerrell Elliott with the following offenses: conspiracy to distribute and possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846 (all three defendants charged; 5 kilograms or more alleged as to Gonzalez and Elliott; 500 grams or more alleged as to Ward) (Count One); distribution and possession with intent to distribute 5 kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A) and 18 U.S.C. § 2 (Gonzalez and Elliott) (Count Two); possession with intent to distribute fentanyl (40 grams or more), cocaine, PCP, and heroin, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), and (b)(1)(C) and 18 U.S.C. § 2 (Ward) (Count Three); possession of a firearm by a prohibited person, in violation of 18 U.S.C. § 922(g)(1) (Ward) (Count Four);

3

and possession of a firearm in furtherance of drug trafficking, in violation of 18 U.S.C. §§ 924(c) and 2 (Ward) (Count Five).

On October 29, 2024, a Prince George's County Assistant State's Attorney filed a motion to enter the Circuit Court matter *nolle prosequi*. On November 4, 2024, the Government sought and obtained a writ to have Mr. Ward brought before this Court in connection with the Indictment. On November 7, 2024, Mr. Ward's case was called in the Circuit Court for Prince George's County.[2] At that hearing, the State dismissed the Circuit Court charges. On November 8, 2023, Mr. Ward made his initial appearance in this Court before Judge Aslan. Then-attorney Noelle Newman was appointed to represent Mr. Ward.[3] Following a detention hearing on November 13, 2023, Judge Austin ordered Mr. Ward released pending trial subject to conditions. However, the Government appealed that decision, and, after a hearing on November 21, 2024, Judge Rubin ordered Mr. Ward detained, in which status he remains pending trial. (ECF No. 31.) On April 2, 2025, Mr. Gonzalez made his initial appearance in this Court.[4] Following a scheduling conference on November 20, 2025, the Court set a trial date for Mr. Ward and Mr. Gonzalez of August 24, 2026.[5] (ECF No. 65.)

On December 19, 2025, then-attorney Newman moved to withdraw from this case as a result of her appointment to the District Court of Maryland for Baltimore City. (ECF No. 66.) On December 22, 2025, the Court granted the motion to withdraw. On or about January 9, 2026, the Court's CJA coordinating attorney reached out to Mr. Lawlor to inquire as to whether he would accept an appointment in a matter before the Court. Mr. Lawlor agreed to do so and was formally

---

[2] The hearing sheet from that date reflects that Mr. Ward was not present.
[3] Ms. Newman is now a Judge of the District Court of Maryland for Baltimore City.
[4] Defendant Elliott has not made an appearance in this case.
[5] The order setting that trial date was initially filed under seal. It was later unsealed on or about February 9, 2026. (ECF No. 73.)

appointed on January 12, 2026. On January 14 and 15, 2026, Mr. Lawlor and his associate entered their appearances as counsel for Mr. Ward. On or about January 14, 2026, counsel sent via FedEx a 2 TB hard drive to the Government for discovery in this case.[6] On February 18, 2026, counsel received the hard drive back from the Government. On February 25, 2026, counsel wrote to the Government to inform the Government that the folder with the Title III recordings[7] did not work and also inquired about covert camera surveillance footage, which was referenced in discovery materials but not produced on the hard drive. In particular, the discovery materials indicated that the Government had obtained covert camera footage from a number of locations (including High Timber) over several months. Written materials in discovery indicated that the Government had obtained surveillance footage of High Timber dating back to early September 2023. The Government uploaded the Title III recordings to a file sharing platform. With respect to the covert camera footage, the Government indicated that it was not produced because of its size and invited counsel to come to the U.S. Attorney's Office to review it. The Government also directed counsel to the following language in the production letter.

> The Government will continue to provide additional discovery on a rolling basis. The Government also has video surveillance from covert cameras in this investigation. Due to the large amount of data, video surveillance is not provided in this disclosure. If you want to review it, you can visit the U.S. Attorney's Office (in Baltimore) or send the U.S. attorney's office a two-terabyte hard drive and we will copy the video footage on the hard drive and send it back to your office.

---

[6] On January 29, 2026, counsel wrote to the Government and indicated that counsel intended to move to withdraw from this case because counsel was unavailable for an August 3 trial date. Counsel did not have the case number at the time he accepted the appointment in this case and did not know that a trial date had been set. Once counsel reviewed the public docket and saw the August 3 date, counsel realized that there was a conflict with scheduled leave. However, the Government alerted counsel that the trial date had been moved to August 24 (the operative scheduling order was still sealed at the time). Counsel did not move to withdraw as counsel is available for that trial date.

[7] The recordings were intercepted from inside of a vehicle, not over a traditional telephone line.

On or about March 3, 2026, counsel sent another 2 TB hard drive to the Government. Counsel assumed, based on the production letter, that the 2 TB hard drive would be large enough to hold all of the covert camera footage in this case. On or about March 19, 2026, counsel received the hard drive back from the Government. The production letter indicated that the following materials were saved to the drive.

| Bates Range Start | Bates Range End | Description |
| --- | --- | --- |
| NATIVES | | **Native Audio/Video/Photograph/PDF/Excel Files**<br>• 6-1-High Timber – Pole cams from 02/2024 through 07/2024 |

Counsel began reviewing the produced footage, which related *only* to the High Timber location (not the other locations referenced in discovery) and dated from February 27, 2024 through July 30, 2024 (not dating back to September 2023. Counsel continued to review the other voluminous materials, including reports, photographs, cell phone extractions, search warrants, and lab reports.

Meanwhile, on March 15, 2026, Mr. Gonzalez filed a severance motion. On May 7, 2026, the parties appeared for a motions hearing. As forecasted by informal correspondence to the Court and set forth on the record, Mr. Ward requested that certain motions be filed. The Court stated that it would not permit hybrid representation and that it was not inclined to replace counsel. However, the Court indicated that it would appoint another attorney to review the discovery, consult with Mr. Ward, and pursue any motions. The Court then set a further motions schedule. Attorney Jennifer Smith was appointed as co-counsel under the CJA. On May 8, 2026, counsel sent a lengthy email to the Government requesting *all* of the covert camera footage for *all* of the locations at issue in this case (as well as other documents that had not been produced but which were referenced in

the discovery).[8] Counsel also noted that the High Timber footage from September 2023 through February 26, 2024 was missing.

The Government responded and requested a 20 (twenty) TB hard drive for the additional materials.[9] The Government further noted: "The requested materials will not have surveillance footage from High Timber Road from September 2023 through February 26, 2024. It is my understanding that the footage acquired from September 2023 through February 26, 2024, does not exist anymore. I will reach to the agent to get obtain the specific reason for why that footage is not available." On May 20, 2026, counsel followed up to ask why the pole camera footage no longer exists. That same day, the Government responded: "The camera footage from High Timber Road between the dates of September 2023 through February 26, 2024, was acquired from a mobile camera. The footage from the mobile camera was not retained. It is my understanding that the footage acquired from February 27, 2024 up until July of 2024 was acquire from a pole camera, which was provided in discovery."

Counsel does not know: (1) why the footage was deleted or not retained; (2) when it was deleted; (3) by whom it was deleted; (4) when or whether the Government was planning to inform counsel that more than five months of surveillance footage – from a location that is central to the Government's allegations – had been deleted. Trial is quickly approaching.

## II.    Request for Discovery Status Conference

In light of issues raised by the Government's disclosure that a substantial amount of surveillance footage from High Timber was deleted, counsel respectfully requests that the Court

---

[8] Again, based on the first discovery letter, counsel assumed that the second 2 TB hard drive would be large enough to hold all of the footage.

[9] Counsel has now ordered a 22 TB hard drive. Once received, counsel will send it to the Government.

convene a discovery status conference. Under Federal Rule of Criminal Procedure 16(a)(1)(E), "[u]pon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and: (i) the item is material to preparing the defense; (ii) the government intends to use the item in its case-in-chief at trial; or (iii) the item was obtained from or belongs to the defendant." Mr. Ward has requested discovery, including all surveillance footage from the locations at issue in this case. The footage consists of (or, in the case of deleted footage, consisted of) data. Surveillance footage from High Timber is material to preparing Mr. Ward's defense. The Government has alleged a conspiracy dating back to no later than August 2023 and continuing through July 2024. Footage from September 2023 through February 2024 falls squarely within this timeframe. At least at some point, this footage was in the Government's possession. The Government has alleged that the High Timber address was a "stash house" for the alleged conspiracy. The utilities for that address were listed in Mr. Ward's name. In the early morning hours of July 16, 2024, Mr. Ward was arrested at the High Timber address. Counts Three through Five of the Indictment relate to the search of that residence. The footage is plainly discoverable. Without more information concerning the circumstances under which the footage was deleted or not retained, Mr. Ward is unable to assess the many forms of relief he might seek with respect to the possible spoliation of this material. The Government's explanation thus far has not provided much detail. It is Mr. Ward's hope that more information may come to light in a conference with the Court. Given the upcoming trial date, Mr. Ward respectfully requests that the Court convene a discovery status conference on an expedited basis.

### III.    Legal Standard – Motion to Suppress

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Warrantless searches are presumptively unreasonable "except in certain carefully defined classes of cases." *Cady v. Dombrowski*, 413 U.S. 433, 439 (1973) (internal quotation marks omitted). "A warrantless search by the police is invalid unless it falls within one of the narrow and well-delineated exceptions" to the Fourth Amendment's warrant requirement. *Flippo v. West Virginia*, 528 U.S. 11, 13 (per curiam); *see also Coolidge v. New Hampshire*, 403 U.S. 443, 455 (1971) (explaining that "the most basic constitutional rule in this area is that searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions") (internal citations omitted). The Government bears the burden of proof in justifying a warrantless search or seizure. *Welsh v. Wisconsin*, 466 U.S. 740, 749-50 (1984); *United States v. Watson*, 703 F.3d 684, 689 (4th Cir. 2013).

The Fourth Amendment further commands that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." *Id*. The Supreme Court has distilled three requirements for a warrant to issue under the Fourth Amendment:

> First, warrants must be issued by neutral, disinterested magistrates. Second, those seeking the warrant must demonstrate to the magistrate their probable cause to believe that the evidence sought will *aid in a particular apprehension or conviction for a particular offense.* Finally, warrants must particularly describe the things to be seized, as well as the place to be searched.

*Dalia v. United States*, 441 U.S. 238, 255 (1979) (internal citations omitted) (emphasis added). Probable cause for a search exists when, "given all the circumstances set forth in the affidavit . . ., there is a fair probability that contraband or evidence of a crime will be found in a particular place."

9

*Illinois v. Gates*, 462 U.S. 213, 238-39 (1983). Where an affidavit in support of a search warrant contains illegally obtained information, a reviewing court excises the tainted information and assesses whether "the affidavit's other averments set forth probable cause." *United States v. Gillenwaters*, 890 F.2d 679, 681 (4th Cir. 1989).

"Probable cause to believe that a person is engaged in criminal activity is not *carte blanche* to search all their personal effects. There must also be some nexus between the suspected crime and the place to be searched—a substantial likelihood that evidence of a crime will be found *in a particular place.*" *United States v. Orozco*, 41 F.4th 403, 409 (4th Cir. 2022) (emphasis in original) (internal citation omitted). Mere speculation, however, is insufficient to demonstrate a nexus between a crime under investigation and a location to be searched. *See, e.g.*, *United States v. Shanklin*, No. 2:12CR162, 2013 WL 6019216, at *8-9 (E.D. Va. Nov. 13, 2013) (rejecting as invalid a search warrant in which the affiant cited "a possibility that the computers contain evidence of the exploitation of children, a speculation that is insufficient to establish probable cause" and declining to apply the good faith exception where "[t]he detective attempted to establish probable cause using conclusory and speculative assertions"); *United States v. White*, 660 F.2d 1178, 1184 (7th Cir. 1981) ("A lawful seizure must be based upon a 'nexus' between the item seized and particular criminal behavior. The 'nexus' must be one *known to the officers* at the time of the seizure and *may not be based upon mere speculation*.") (citations omitted) (emphasis added). Additionally, the "particularity requirement protects against a general, exploratory rummaging in a person's belongings, to the extent that a valid warrant leaves nothing to the discretion of the officers performing the search." *United States v. Kimble*, 855 F.3d 604, 610 (4th Cir. 2017) (internal quotation and citation omitted).

"A valid search warrant may issue only upon allegations of facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at  that time." *United States v. McCall*, 740 F.2d 1331, 1335-36 (4th Cir. 1984) (internal quotation and citation omitted). Accordingly, "evidence seized pursuant to a warrant supported by 'stale' probable cause is not admissible in a criminal trial to establish the defendant's guilt." *Id*. at 1336; *see also United States v. Doyle*, 650 F.3d 460, 474 (4th Cir. 2011).

Moreover, in *Franks*, the Supreme Court "held that in certain narrowly defined circumstances a defendant can attack a facially sufficient affidavit." *United States v. Colkley*, 899 F.2d 297, 300 (4th Cir. 1990)." "To obtain a *Franks* hearing, a defendant must make a substantial preliminary showing that the affiant made (1) a false statement (2) knowingly and intentionally, or with reckless disregard for the truth that was (3) necessary to the finding of probable cause." *United States v. White*, 850 F.3d 667, 673 (4th Cir. 2017) (internal quotation and citation omitted). "Along with affirmative false statements, *Franks* protects against omissions that are designed to mislead, or that are made in reckless disregard of whether they would mislead, the magistrate." *United States v. Haas*, 986 F.3d 467, 474 (4th Cir. 2021) (internal quotation and citation omitted). To obtain a *Franks* hearing on the basis of a material omission in a search warrant application, Mr. Ward must make a substantial preliminary showing that: "(1) law enforcement made an omission; (2) law enforcement made the omission knowingly and intentionally, or with reckless disregard for the truth, and (3) the inclusion of the omitted evidence in the affidavit would have defeated its probable cause." *Id.* (citation omitted).

"If a *Franks* hearing is appropriate and an affiant's material perjury or recklessness is established by a preponderance of the evidence, the warrant must be voided and evidence or testimony gathered pursuant to it must be excluded. A warrant that violates *Franks* is not subject

11

to the good-faith exception to the exclusionary rule[.]"*Colkley*, 899 F.2d at 300 (internal citations omitted).

## IV.     Mr. Ward Has Standing to Challenge the Searches and Seizures at Issue

It is well established that "Fourth Amendment rights are personal, which means that a defendant can mount a Fourth Amendment challenge only if he has his own cognizable Fourth Amendment privacy interest in the invaded place." *United States v. Green*, 106 F.4th 368, 375 (4th Cir. 2024). In this case, Mr. Ward has a protected Fourth Amendment interest as to each of the searches and seizures at issue. First, there can be no serious argument that Mr. Ward lacks a privacy interest as to the seizure and search of his own person. Second, Mr. Ward has standing to challenge searches related to the -4663 number, which was subscribed in his name. Third, Mr. Ward has standing to challenge the search of the High Timber residence. As the Government has noted throughout this case, the utilities at the residence were under Mr. Ward's name.[10] Mr. Ward was arrested at the home, where he had slept the night before. Fourth, Mr. Ward has standing to challenge the search of his own cell phone device.

## V.     The Court Should Suppress the Fruits of the Search Warrants and Hold a *Franks* Hearing

As an initial matter, Mr. Ward requests a *Franks* hearing as to each of the challenged search warrants because, in each instance, the affiant failed to inform the reviewing judge that the Government was either planning to or had already deleted surveillance footage from High Timber from September 2023 through February 26, 2024. The September 21, 2023, February 23, 2024,

---

[10] *E.g.*, ECF No. 50 at 19-20 (At the detention appeal hearing, Government noting that Pepco billing records for the residence were in Mr. Ward's name and relying on "the cam from September 2023 to July," a large portion of which, apparently, has been deleted).

and July 8, 2024 warrants at issue rely directly on observations from this footage. For example, the September 21, 2023 affidavit states:

> 38.    On September 8, 2023, at approximately 6:30 a.m., investigators arrived at 2107 High Timber Road, Fort Washington, MD.  Upon arrival, investigators observed a black Chrysler sedan bearing Washington D.C. registration FRZ3684, and a white Range Rover bearing Washington D.C. registration JE0670.  Both vehicles are registered to Ronathony **WARD** at 2610 Naylor Road, SE Washington DC.  Based on subsequent surveillance, obtained from a covert surveillance platform, at approximately 7:46 a.m., **WARD** was observed walking out of the residence and departing in the black Chrysler.

> 39.    On September 16, 2023, at approximately 10:42 a.m., based on a covert
>
> 18
>
> USA-0852
>
> 1:23-mj-02487-BAH / 1:23-mj-02493-BAH
>
> surveillance platform, a newer model white Toyota Tundra, with unknown registration, pulled up in front of 2107 High Timber Road, Fort Washington, MD and stopped in the driveway. Subsequently, Jerrell **ELLIOTT**[2] exited the driver's seat of the Tundra and walked toward the front door of 2107 High Timber Road, while carrying a dark green backpack.

The affidavit continues with other representations based on the destroyed footage. The February 23, 2024 affidavit contains additional information about the deleted footage such as the following.

> 36.    On February 8, 2024, while utilizing a covert camera positioned near 2107 High Timber Rd., the residence of Ronthony WARD, investigators observed a Jeep Wagoneer arrive and park in front of the residence. A query of the vehicle's registration revealed that the vehicle

The February 23, 2024 affidavit even contains what appear to be still shots from the deleted footage.

13

> 41. ELLIOTT and WARD walked back into the view of the covert camera and parted ways. ELLIOTT entered the **TARGET VEHICLE** with nothing in hand as WARD entered the front door of his residence carrying several duffle bags. The bags appeared to be weighted down at the time of observation. Below are still photographs of the aforementioned observations.
>
>

As reflected in the example below, the July 8 affidavit also relies on the deleted footage.

> 52. As mentioned earlier, **WARD** holds the power account for **Target Location 2**. Surveillance conducted on **Target Location 2** showed **ELLIOTT** and **WARD** frequent the location often since September of 2023. It is suspected that **WARD** shares a place of residence between **Target Location 2** and elsewhere. I believe that **WARD** and **ELLIOTT** are utilizing **Target Location 2** as a stash location.

And while the July 22, 2024 cell phone affidavit does not explicitly reference the deleted footage, the warrant is the direct fruit of the execution of the July 8 warrant to search the High Timber residence and Mr. Ward's person.

Through representation about the content of the footage, which we now know to have been deleted, law enforcement sought to establish a connection between Mr. Elliott and Mr. Ward and Mr. Elliott and the residence, all in support of the theory that the residence was a drug stash house. These representations are material to any finding of probable cause. Yet they are tainted by the

omission of the Government's plan to delete or completed deletion of the footage.[11] Any judge would want to know that law enforcement planned to destroy or had already destroyed potential evidence. The failure to inform a reviewing judge about the planned or completed deletion of footage that formed the basis of representations in an affidavit is, at best, reckless. Excising representations about the deleted footage from the affidavits leaves allegations that fall far short of establishing probable cause.

With respect to the pinging data for -4663, the September 21, 2023 warrant authorized the search and seizure of real-time location data for a period of 30 days. The Government produced in discovery a large spreadsheet of GPS ping data for this phone number. The first entry with latitude and longitude dates from September 25, 2023. However, the spreadsheet contains ping data from more than 30 days after that date. For example, there appears to be location ping data for -4663 from early November 2023 through November 19, 2023. Counsel has been unable to locate a warrant covering this additional data. To the extent this data was obtained without a warrant, the Court should suppress it.[12]

With respect to the July 8 warrant to search Mr. Ward and the High Timber residence, separate and apart from the *Franks* issue, any purported probable cause is stale. The affidavit contains representations about Mr. Elliott's actions at the scene of the residence through April 18, 2024. While the affidavit notes that Mr. Ward was *present* at the residence on June 29, 2024, that allegation in no way supports probable cause to believe that evidence of drug trafficking or money

---

[11] Without more information as to the circumstance under which the footage was deleted, Mr. Ward is constrained in the arguments he is able to make. Mr. Ward therefore requests leave to supplement this motion once a more fulsome factual basis for the deletion has been ascertained.

[12] The spreadsheet containing GPS ping data jumps from November 19, 2023 to February 23, 2024, the date the other pinging warrant for -4663 was issued. The pinging data ends with entries dated March 23 and 24, 2024.

laundering would be found in the home or on the person of Mr. Ward in *July* 2024. The Court should therefore suppress the fruits of the July 8 warrant.[13]

### CONCLUSION

For the reasons set forth above and those to be presented at a hearing, this Court should suppress the fruits of the September 21, 2023, February 23, 2024, July 8, 2024, and July 22, 2024 search warrants. The Court should also hold a *Franks* hearing. Finally, the Court should convene a discovery status in light of the destruction of surveillance footage related to a critical location in this case.

Respectfully submitted,

_____/s/_____
Michael E. Lawlor
Brennan, McKenna & Lawlor, Chtd.
6305 Ivy Lane, Suite 700
Greenbelt, Maryland 20770
(301) 474-0044
mlawlor@brennanmckenna.com

Jennifer Smith
Law Offices of Gary Proctor, LLC
233 E. Redwood St., Ste. 1000C
Baltimore, Maryland 21202
410.444.1500

---

[13] As noted above, the July 22 cell phone warrant is the product of the search of the High Timber residence. Its fruits should be suppressed as fruit of the poisonous tree. *Wong Sun v. United States*, 371 U.S. 471, 488 (1963).

16

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 29th day of May, 2026, the foregoing was served on all

parties via ECF.


_____/s/_____
Michael E. Lawlor